UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RICHARD JAVIER MENDOZA
HENRIQUEZ, A-244-159-007,

Petitioner,

v.

WARDEN GOLDEN STATE ANNEX, et
al.,

Respondents.

No.  1:26-cv-0927 DAD AC

FINDINGS AND RECOMMENDATIONS

Petitioner, an immigration detainee proceeding through counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

I.      Factual Background

Petitioner is a native of Venezuela who entered the United States and applied for admission on August 27, 2023.  ECF No. at 11 at 1; ECF No. 12 at 1.  Later that same day, he was paroled into the United States under 8 U.S.C. § 1182(d)(5).[1]  Id.; ECF No. 11-1 at 1.  While released, petitioner filed an I-589 Application for Asylum, Withholding of Removal, and Protection Under Convention against Torture, and his spouse filed an I-130 Petition for Alien

---

[1]  For consistency, the undersigned will cite to the applicable United States Code sections throughout without reference to the corresponding section of the Immigration and Nationality Act.

1

Relative.  ECF No. 12 at 2.  Both remain pending.  Id.  On January 10, 2026, petitioner reported to a scheduled check-in appointment when he was arrested.  Id.  Petitioner asserts that he was told he failed to send in a photo, which was untrue.  ECF No. 1 at 5.  However, petitioner's counsel has been unable to locate any documentation identifying the reason for the arrest (ECF No. 12 at 2) and respondents did not provide any such documentation or explanation for petitioner's arrest in their response to the petition (ECF No. 11).  Respondents assert that on February 13, 2025, petitioner was arrested for forging or altering a vehicle registration, but they do not assert that this was the basis for petitioner's arrest and re-detention.  Id. at 1.

II.    Procedural History

On January 28, 2026, petitioner filed a pro se petition for writ of habeas corpus under 28 U.S.C. § 2241 challenging his detention by the DHS.  ECF No. 1.  The petition alleges that petitioner's arrest and continued prolonged detention without a bond hearing violate due process.  Id.  The petition was accompanied by a motion to appoint counsel (ECF No. 2), which was granted (ECF No. 4).  Respondents oppose the petition, arguing that petitioner's due process rights have not been violated because he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) and therefore not entitled to a bond hearing.  ECF No. 11.  Petitioner, through appointed counsel, filed a traverse reiterating that his due process rights have been violated and arguing that he is subject to § 1226, not § 1225, and therefore not subject to mandatory detention.  ECF No. 12.

On March 19, 2026, the undersigned found that, liberally construed, the petition stated a claim for revocation of release and directed respondents to file a supplemental response that "substantively address[ed] whether there are any factual or legal issues that materially distinguish this case from the court's prior orders in Rocha Chavarria v. Chestnut, No. 1:25-cv-1755 DAD AC, 2025 WL 3533606 (E.D. Cal. Dec. 9, 2025).  ECF No. 13.  Respondents filed a response stating that they have nothing further to add to their response and "are unaware of any factual or legal issues that materially distinguish this case from the Court's prior orders listed in its minute order."  ECF No. 14.

////

2

III.    Legal Standard

A writ of habeas corpus may be granted to anyone who is held in custody in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2241(c)(3); Magana-Pizano v. I.N.S., 200 F.3d 603, 609 (9th Cir. 1999) ("28 U.S.C. § 2241 expressly permits the federal courts to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.'" (citations omitted)).  In federal habeas proceedings, the petitioner is required to prove their case by a preponderance of the evidence. Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004).

IV.    Discussion

A.    Statutory Framework

Petitioner argues that he is unlawfully detained because he is subject to § 1226, not § 1225(b)(2), and therefore entitled to a bond hearing before a neutral adjudicator.  ECF No. 12 at 2-3.  He also alleges generally that he is entitled to due process protections in his immigration proceedings.  Id. at 3-4; ECF No. 1.  Respondents argue that petitioner is not entitled to a bond hearing because he is subject to mandatory detention under § 1225(b)(2).  ECF No. 11.

Title 8 U.S.C. § 1225 governs the procedures by which the government may mandatorily detain "an applicant for admission."  Section 1225(a)(1) defines "an applicant for admission" as a noncitizen "present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including [a noncitizen] who is brought to the United States after having been interdicted in international or United States waters)." 8 U.S.C. § 1225(a)(1).

"[A]pplicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)."  Jennings v. Rodriguez, 583 U.S. 281, 287 (2018).  Both categories are subject to mandatory detention until a certain point or until certain proceedings have concluded.  Id.  Despite mandatory detention, applicants for admission may be temporarily released on parole "for urgent humanitarian reasons or significant public benefit."  Id. at 288 (citing 8 U.S.C. § 1182(d)(5), 8 C.F.R. §§ 212.5(b), 235.3 (2017)).  The "express exception to detention" under 8 U.S.C. § 1182(d)(5) "implies that there are no *other* circumstances under

3

which [noncitizens] detained under § 1225(b) may be released." Id. at 300.  Accordingly, there is no statutory right to a bond hearing for noncitizens detained under § 1225(b).  Id. at 296-97.  By regulation, release is available only where "the aliens present neither a security risk nor a risk of absconding."  8 C.F.R. § 212.5(b).

Section 1226, on the other hand, "provides the general process for arresting and detaining aliens who are present in the United States and eligible for removal" and, under subsection (a), the government has broad discretion to detain or release.  Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing Jennings, 583 U.S. at 288).  It also provides that "a detainee may request a bond hearing before an immigration judge at any time before a removal order becomes final" and "an individual detained pursuant to § 1226(a) may request an additional bond hearing whenever he experiences a material change in circumstances."  Id. at 1197 (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19).

B.    Due Process

The parties dispute whether petitioner is subject to § 1225 or § 1226.  See ECF No. 11 at 1; ECF No. 12 at 2-3.  However, it is unnecessary for the undersigned to resolve which statute applies here, because it is undisputed that petitioner was paroled under § 1182(d)(5). Accordingly, as outlined below, his release entitled him to a pre-deprivation bond hearing prior to being detained.

The Due Process Clause protects persons in the United States from being "deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."  Zadvydas v. Davis, 533 U.S. 678, 693 (2001) (citations omitted).  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects," Zadvydas, 533 U.S. at 690, and "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often other," Morrissey v. Brewer, 408 U.S. 471, 482-483 (1972).

////

"Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute." Omer G.G. v. Kaiser, No. 1:25-cv-1471 KES SAB, __ F. Supp. 3d __, 2025 WL 3254999, at *5 (E.D. Cal. Nov. 22, 2025) (citing Young v. Harper, 520 U.S. 143, 147-49 (1997); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973); Morrissey v. Brewer, 408 U.S. 471, 482 (1972)). "Many district courts in the Ninth Circuit have found that non-citizens paroled into the United States pursuant to § 1182(d)(5) have a liberty interest in their continued release, entitling them to certain due process protections." Rocha Chavarria, 2025 WL 3533606, at *3 (collecting cases); D.L.C. v. Wofford, No. 1:25-cv-1996 DC JDP, 2026 WL 25511, at *4 (E.D. Cal. Jan. 5, 2026) ("[A] substantial number of district courts in the Ninth Circuit have found that noncitizens paroled into the United States under § 1182(d)(5) have a liberty interest in their continued release and are entitled to certain due process protections." ) (collecting cases); Flores v. Chestnut, No. 1:26-cv-0078 TLN CSK, 2026 WL 504650, at *4 (E.D. Cal. Feb. 24, 2026) (court did not need to determine whether petitioner was detained under § 1225 or § 1226 because she "had a protected liberty interest in her release, regardless of which detention statute applies." (collecting cases)).

To the extent respondents assert that petitioner was arrested for forging or altering a vehicle registration, they do not contend that this arrest was the basis for the revocation of his parole. Moreover, petitioner's parole was not revoked until January 10, 2026, approximately eleven months later. By initially releasing petitioner on parole, the government necessarily determined that he was "neither a security risk nor a risk of absconding," 8 C.F.R. § 212.5(b), and there is no evidence that petitioner's arrest changed that assessment. By permitting petitioner to remain at liberty for approximately two-and-a-half years, eleven months of which elapsed after his arrest, the government enabled petitioner to develop a protected liberty interest in remaining out of custody.

For these reasons, the undersigned follows the many district courts in the Ninth Circuit holding that noncitizens granted parole under § 1182(d)(5) have a liberty interest in their continued release and finds that petitioner has such a liberty interest. Having determined that a

liberty interest exists, the court must now examine what process is due. See Ky. Dep't of Corrs. v. Thompson, 490 U.S. 454, 460 (1989) (the court "first asks whether there exists a liberty or property interest which has been interfered with" and then "examines whether the procedures attendant upon that deprivation were constitutionally sufficient").

To determine what process is due, the court considers three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews v. Eldridge, 424 U.S. 319, 335 (1976). Due process rights in the immigration context "must account for the government's countervailing interests in immigration enforcement." Rodriguez Diaz, 53 F.4th at 1206.

With respect to the first factor, petitioner has a strong private interest in remaining free from detention. Zadvydas, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). Petitioner was out of custody for approximately two-and-a-half years prior to the revocation of his parole and states that due to his detention he has been separated from his wife and child and lost his employment. ECF No. 1 at 6. There is no indication that petitioner has not cooperated with immigration authorities during his release. This factor therefore weighs in petitioner's favor.

The second factor, the risk of erroneous deprivation, also weighs in petitioner's favor. Considering that petitioner has been detained without being provided a bond hearing and petitioner has been given no explanation for his detention aside from an allegedly false claim that he failed to submit a photo, the risk of erroneous deprivation is high. See A.E. v. Andrews, No. 25-cv-0107 KES SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) ("The risk of an erroneous deprivation [a petitioner's] interest is high where [h]e has not received any bond or custody redetermination hearing[.]" (alterations in original) (citation and internal quotation marks omitted)); R.D.T.M. v. Wofford, No. 1:25-cv-01141 KES SKO, 2025 WL 2617255, at *6 (E.D.

6

Cal. Sept 9, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community." (alteration in original) (citations omitted)).  Although respondents assert that petitioner was arrested in February 2025, they do not argue that the arrest makes petitioner a flight risk or danger to public safety, and no neutral arbiter has determined that the arrest or any other factors show petitioner is a flight risk or danger to the community.

Finally, while the government has an interest in enforcing its immigration laws, "its interest in detaining petitioner without a hearing is 'low' and custody hearings in immigration court "are routine and impose a 'minimal' cost." R.T.D.M., 2025 WL 2617255, at *6 (citing Ortega, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)).

For these reasons, the court finds that the government's interest in detaining petitioner without a hearing is low and does not outweigh petitioner's substantial liberty interest or the high risk of erroneous deprivation of liberty and that respondents were required to provide him with a pre-deprivation hearing prior to revoking his parole.  Respondents point to no reasons why a pre-deprivation hearing could not be held, and provide no evidence of "urgent concerns," warranting petitioner's re-detention without a hearing, thus, "a pre-deprivation hearing is required to satisfy due process." Guillermo M.R. v. Kaiser, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025) (finding no urgency where ICE waited over six weeks after petitioner's arrest by local law enforcement to arrest and re-detain petitioner).

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's petition for writ of habeas corpus (ECF No. 1) be GRANTED, as follows:

   a. Respondents shall IMMEDIATELY RELEASE petitioner Richard Javier Mendoza Henriquez, A-244-159-007, with the same conditions he was subject to immediately prior to his detention on January 10, 2026.  At the time of release, respondents must return all of petitioner's documents and possessions.

   b. Respondents shall not impose any additional restriction on petitioner unless it is determined to be necessary at a future pre-deprivation/custody hearing.

7

c.  Respondents are ENJOINED AND RESTRAINED from re-detaining petitioner unless they provide at least 7 days' written notice to petitioner and hold a pre-deprivation bond hearing before a neutral decision maker, at which hearing respondents will bear the burden of demonstrating that petitioner is a flight risk or danger to the community and petitioner's eligibility for bond must be considered.

2.  Within three days of an order adopting these findings and recommendations, respondents be required to file a notice of compliance confirming petitioner's release and that the conditions of his supervision are the same as those to which he was subject prior to his January 10, 2026 detention.

3.  The Clerk of the Court is directed to enter judgment for petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  Within **seven** days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 24, 2026

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE